OPINION
{¶ 1} The appellant, Richard Spurlock, appeals the May 19, 2003 judgment of the Common Pleas Court of Hancock County, Ohio, convicting him of possession of cocaine with a firearm specification and sentencing him to six years of imprisonment plus an additional year for the specification.
 {¶ 2} In early April of 2002, local law enforcement received information that cocaine was being sold from a home on Rockwell Avenue in Findlay, Ohio. In response to this information, officials located the tenant of that home, Dawn Oates, and confronted her with this information. Oates informed the officers that two men were selling drugs from her home and then consented to a search of her residence. As a result, members of the Findlay Police Department in conjunction with the Hancock County Sheriff's Office conducted a raid of Oates' home.
 {¶ 3} Law enforcement officials elected to use the emergency response team ("ERT") of the Findlay Police Department to breach the home's entrance because they were informed that the people who were selling drugs from the home also carried handguns. As the ERT approached the home, a man unexpectedly pulled into the driveway. The ERT immediately began shouting repeatedly for this person to exit the vehicle and lie face down. Once the man complied, the ERT entered the residence. Upon entering the Rockwell Avenue home, police found Roger Bates in the living room, and two other men, Richard Spurlock and Marcus Pryor, along with a woman, Diane Summers, in a bedroom. All four were searched, and crack cocaine and over $1,500 was found on Pryor. Although no cocaine was found on the remaining three people, police discovered over $2,100 on Spurlock. In addition, the police recovered crack cocaine from underneath the mattress in the bedroom where Spurlock, Pryor, and Summers were first located, as well as a handgun on the nightstand. Spurlock and Pryor were then arrested.
 {¶ 4} On April 9, 2002, Spurlock was indicted by the Hancock County grand jury for one count of possession of crack cocaine in an amount in excess of ten grams but that did not exceed twenty-five grams in violation of R.C. 2925.11(A), a felony of the second degree. In addition, this count contained a firearm specification for having a firearm on or about his person or under his control while in possession of the crack cocaine. Spurlock pled not guilty to the charge and specification, and the matter proceeded to a three-day jury trial on May 5-7, 2003. At the conclusion of the trial, the jury found Spurlock guilty of possession of crack cocaine and the attendant specification. Thereafter, the trial court sentenced him to a term of imprisonment for six years on the drug count plus an additional year for the firearm specification. This appeal followed, and Spurlock now asserts six assignments of error.
A Trial Court Abuses Its Discretion Where It Sustains The Prosecution's Motion To Amend The Indictment Where Such Amendment Changes The Identity Of The Crime Charged And Prejudices A Criminal Defendant.
The Trial Court Erred In Denying Appellant's Crim.R. 29(A) Motion For Acquittal.
The Evidence Is Insufficient, As A matter Of Law, To Convict Appellant Of The Crime Of Possession Of Drugs, R.C. 2925.11.
The Evidence Is Insufficient, As A Matter Of Law, To Convict Appellant Of A Firearm Specification, R.C. 2941.141.
A CRiminal Defendant's Right To A Fair Trial Is Undermined Where Police Fail To Collect Exonerating Evidence At The Crime Scene.
THE Conviction Of APpellant Is Against The Manifest Weight Of The Evidence.
 First Assignment of Error {¶ 5} In his first assignment of error, Spurlock contends that the trial court erred in permitting the State to amend the indictment to allege that the amount of crack cocaine was "equal to or exceeding 10 grams but less than 25 grams" rather than "in an amount that exceeds ten
(10) grams, but does not exceed twenty-five (25) grams," as originally charged. (Emphasis added.) Criminal Rule 7(D) allows for the amendment of an indictment "at any time before, during, or after a trial * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence[.]" However, this is only permitted "provided no change is made in the name or identity of the crime charged." Crim.R. 7(D). Further, [i]f any amendment is made to the substance of theindictment * * * or to cure a variance between the indictment * * * andthe proof, the defendant is entitled to a discharge of the jury on thedefendant's motion, if a jury has been impaneled * * * unless it clearlyappears from the whole proceedings that the defendant has not been misledor prejudiced by the defect or variance in respect to which the amendmentis made[.]
Id. In interpreting the foregoing language, the Ohio Supreme Court has held that "[a]n indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment." State v. O'Brien (1987), 30 Ohio St.3d 122, paragraph two of syllabus; see, also, State v. Jones, 3rd Dist. No. 9-02-39,2003-Ohio-1576, at ¶ 30, 2003 WL 1617979.
 {¶ 6} Here, Spurlock was indicted for possession of drugs in violation of R.C. 2925.11(A), a second degree felony. As to the amount, the indictment alleged that Spurlock was in possession of an amount of crack cocaine exceeding ten grams but less than twenty-five grams. However, the relevant portion of R.C. 2925.11 that pertains to what constitutes a second degree felony for the offense of possession of drugs states: "[i]f the amount of the drug involved equals or exceeds ten grams but is less than twenty-five grams of crack cocaine, possession of cocaine is a felony of the second degree." R.C. 2925.11(C)(4)(d).
 {¶ 7} During the trial, the State presented evidence that two bags of crack cocaine were recovered during the search, both of which it alleged were in Spurlock's possession. One bag contained 8.58 grams of crack cocaine, and the other contained 2.95 grams of crack cocaine for an aggregate total of 11.53 grams. Thus, the amendment of the indictment in order to allege that the amount was equal to or in excess of ten grams was merely to reflect the exact language of the statute, and neither the name nor identity of the offense was changed. Moreover, Spurlock was aware throughout these proceedings that the State sought to prove that he was in possession of more than ten grams but less than twenty-five grams of crack cocaine, and he was neither misled nor prejudiced by the omission of the words "equal to." Therefore, the first assignment of error is overruled.
Second, Third, Fourth, and Sixth Assignments of Error
 {¶ 8} Spurlock next maintains that the trial court erred in denying his motion for acquittal pursuant to Crim.R. 29(A). In addition, in his third and fourth assignments of error, Spurlock asserts that the State failed to present sufficient evidence that he was guilty of possession of crack cocaine and that he did so with a firearm on or about his person. Further, Spurlock contends in his sixth assignment of error that the verdict of guilty was also against the manifest weight of the evidence. Each of these assignments of error involve questions regarding the evidence presented during the trial and, thus, will be discussed together.
 {¶ 9} Crim.R. 29(A) states that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense[.]" Accordingly, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus; see, also, State v.Boddie, 3rd Dist. No. 1-2000-72, 2001-Ohio-2261, 2001 WL 1023107. However, as this Court has previously held, the Bridgeman standard "must be viewed in light of the sufficiency of evidence test[.]" State v.Foster (Sept. 17, 1997), 3rd Dist. No. 13-97-09, 1997 WL 576353, citingState v. Jenks (1991), 61 Ohio St.3d 259. In Jenks, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Jenks, 61 Ohio St.3d at paragraph two of the syllabus.
 {¶ 10} In contrast, when reviewing whether the verdict was against the manifest weight of the evidence, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Adkins
(Sept. 24, 1999), 3rd Dist. No. 5-97-31, 1999 WL 797144, citing State v.Martin (1983), 20 Ohio App.3d 172, 175; State v. Thompkins (1997),78 Ohio St.3d 380, 387. In making this determination, there are eight factors to consider, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary." State v. Apanovitch
(1987), 33 Ohio St.3d 19, 23-24, citing State v. Mattison (1985),23 Ohio App.3d 10, syllabus. Thus, it is with these standards in mind that we proceed to review the evidence presented during the trial.
 {¶ 11} Spurlock was charged with possession of cocaine in violation of R.C. 2925.11(A). This statute prohibits a person from knowingly obtaining, possessing, or using a controlled substance. R.C.2925.11(A). The level of offense charged by the State against Spurlock was a second degree felony because the alleged controlled substance at issue was crack cocaine in an amount that was equal to or exceeded ten grams but was less than twenty-five grams. See R.C. 2925.11(C)(4)(d). Thus, the State had to prove beyond a reasonable doubt that Spurlock knowingly possessed crack cocaine in an amount equal to or exceeding ten grams but less than twenty-five grams. In addition, this count included a firearm specification. Accordingly, the State also had to demonstrate that he did so while a firearm was on or about his person or under his control in order to attach the specification. See R.C. 2941.141(A).
 {¶ 12} During the trial, the State presented the following evidence. Officer David Young, a member of the ERT that first entered the Rockwell Avenue home, testified that upon entering the home, he located Roger Bates in the living room. He then proceeded to the front bedroom of the home, which he described as a very small space, with another officer and observed Spurlock, Pryor, and Diane Summers looking out the bedroom window towards where the commotion caused by the man who pulled into the driveway was occurring. Upon Officer Young's orders to lie face down, all three complied. The other officer then informed Officer Young that a handgun was present in the room on the nightstand. The three were then taken to the living room. Officer Young additionally testified that the bed separating the window where the suspects were standing from the nightstand where the gun was located consisted of a boxspring and a mattress without any type of frame, which provided little to no impediment for Spurlock to simply reach across the bed and grab the gun had he chosen to do so.
 {¶ 13} Detective Robert Francis also testified during the trial. He searched all four people in the home. Upon searching Pryor, he discovered 2.95 grams of crack cocaine and $1,510. Although Detective Francis did not find crack on Spurlock during the search, he did find $2,192.95. In addition, as previously noted, Detective Harry Neff and Detective Christopher Huber located 8.58 grams of cocaine underneath a corner of the mattress in the bedroom where Spurlock and Pryor were discovered by Officer Young. The corner of the mattress where they found this bag of cocaine was directly next to the nightstand where the handgun was located. Scales, commonly used to weigh drugs for distribution, were also found in the bedroom on a dresser, as was a crack pipe.
 {¶ 14} Dawn Oates testified that she allowed Spurlock and Pryor, both of whom she referred to as "dope boys," to sell crack from her home on multiple occasions, including April 4, 2002. She further stated that the phone in her home would steadily ring while they were there, that they would use her bedroom during their stays, and that no one was allowed in the bedroom while they were there without their permission. She also testified that in exchange for the use of her home, the two men would give her crack, as she was an addict, and would sometimes give her money to pay her bills. In addition, Oates testified that the men came from Columbus, Ohio, to Findlay at other times and would also stay at a local motel. Further, on the day of the search, Oates was with another woman on the way to the bank so that this woman could pay the two men for the crack they had "fronted" her the previous night because they told Oates that they would not give her any more crack until this woman paid them back. Oates also testified that she saw Spurlock and Pryor with a gun at least three times prior to the search, both in her bedroom and at another residence, including once when the weapon was on the floor between Spurlock's legs. She even told Spurlock and Pryor when they were at her home not to leave their gun in places accessible to her young nephew, but instead, to put it under the bed.
 {¶ 15} Diane Summers, who was in the bedroom with the two men when police raided the home, also testified on behalf of the State. She testified that Spurlock and Pryor came from Columbus to Findlay at various times and sold crack cocaine, including selling crack on the day of the search. She also testified that she sold $40 worth of crack that they had given to her on April 4, 2002, and she gave the money from the sale to Spurlock. Summers further stated that the two men both gave her cocaine for her personal consumption. However, she testified that she never saw the men with a firearm.
 {¶ 16} First, Spurlock contends that there was not sufficient evidence to establish that he was in possession of the 2.95 grams found on Pryor. Basically, he maintains that the mere fact that he was with Pryor did not establish that he was in possession of the crack on Pryor. Further, Spurlock asserts that the fact that the crack was in Pryor's possession demonstrates that Pryor, not Spurlock, was the one in possession of the 2.95 grams of crack cocaine. In addition, he argues that the evidence did not demonstrate that the 8.58 grams discovered underneath the mattress were in his possession nor did it show that he had a firearm on or about his person or under his control while possessing drugs. We disagree.
 {¶ 17} The term "possession" is defined by the Revised Code as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession of a controlled substance may be actual or constructive. State v. Mann (1993), 93 Ohio App.3d 301, 308.
 {¶ 18} A person has actual possession of an item when it is within his immediate physical control. State v. Messer (1995), 107 Ohio App.3d 51,56. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." State v. Hankerson (1982),70 Ohio St.2d 87, 91, citing State v. Wolery (1976), 46 Ohio St.2d 316. However, the State must also show "that the person was conscious of the presence of the object." Hankerson, supra. "Readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession. State v. Ruby,149 Ohio App.3d 541, 2002-Ohio-5381, at ¶ 36. Likewise, in determining whether an individual was in possession of a firearm, the trier of fact may consider all relevant facts and circumstances surrounding the crime. Thompkins, 78 Ohio St.3d at 385. Circumstantial evidence and direct evidence have the same probative value. Jenk, 61 Ohio St.3d at paragraph one of the syllabus.
 {¶ 19} In the instant case, since neither the crack cocaine nor the handgun was found on Spurlock's person, the State was required to establish that he constructively possessed them. In reviewing the evidence in a light most favorable to the prosecution, the record reflects sufficient evidence that Spurlock was in constructive possession of both bags of crack as well as the handgun.
 {¶ 20} The testimony recited previously revealed that Spurlock and Pryor acted as partners in selling drugs. They frequently traveled to Findlay together and sold cocaine together in Oates' home. They both gave Summers cocaine to consume and to sell, and Spurlock collected the money from her, including one such sale on April 4, 2002. They also were each in possession of a significant amount of cash when searched, a fact in direct contrast to testimony that was provided by the officer who booked Spurlock after his arrest who stated that Spurlock informed her that he was a twenty-seven-year-old unemployed, unskilled laborer. Moreover, Oates testified that when Spurlock and Pryor were in her home, no one was permitted into the bedroom that they used without their permission. In addition, Oates testified that she was a cocaine user and would consume whatever crack she had immediately upon obtaining it rather than keeping it, and, in fact, she was going to the bank with her friend on April 4, 2002, so that her friend could get money to pay Spurlock and Pryor because they would not give Oates any more crack until her friend paid them back. All of this testimony regarding how the two men acted together in this endeavor to sell crack cocaine provided sufficient evidence for a rational trier of fact to reasonably have concluded that Spurlock was able to knowingly exercise dominion or control over the cocaine located in Pryor's pocket.
 {¶ 21} The undisputed testimony at trial also revealed that Spurlock and Pryor were both seen with a handgun on multiple occasions, including in Oates' home, and no evidence was presented linking the gun to anyone else. Furthermore, the 8.58 grams of crack and the handgun were in close proximity to Spurlock, given the small size of the bedroom and the lack of a bed frame in relation to Spurlock's location in the room when police entered. Thus, the jury could have reasonably concluded that Spurlock was in the constructive possession of both of these items as well. Accordingly, a rational trier of fact could have found the essential elements of possession of crack cocaine in an amount equal to or exceeding ten grams but less than twenty-five grams, while Spurlock had a firearm on or about his person or under his control, proven beyond a reasonable doubt. Thus, the evidence was sufficient as a matter of law, and the trial court did not err in overruling Spurlock's motion for acquittal.
 {¶ 22} Last, in light of the evidence presented, we do not find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Therefore, the verdict was not against the manifest weight of the evidence, and the second, third, fourth, and sixth assignments of error are overruled.
Fifth Assignment of Error
 {¶ 23} In his fifth assignment of error, Spurlock contends that he was denied due process and his right to a fair trial because the police failed to collect exonerating evidence at the crime scene. In support of this argument, Spurlock maintains that the police failed to keep a receipt recovered from Spurlock for a dollar amount of four figures. Spurlock argues that this receipt accounted for why he was in possession of such a large sum of money. Essentially, he asserts that on its face such an amount of money in his possession under these circumstances would tend to lead one to believe that he obtained it from the sale of drugs but that this receipt would serve to provide a legitimate source for this money. Therefore, he contends that he was denied a fair trial because the police failed to retain this exonerating evidence.
 {¶ 24} A criminal defendant is denied due process when the State fails to preserve materially exculpatory evidence or destroys potentially useful evidence in bad faith. State v. Benton (2000), 136 Ohio App.3d 801,805, citing California v. Trombetta (1984), 467 U.S. 479, 489; Arizonav. Youngblood (1988), 488 U.S. 51, 58. The United States Supreme Court has held that a State's failure to preserve evidence does not automatically render such failure a constitutional defect, which would warrant a dismissal of the charge. Trombetta, 467 U.S. at 488. In Trombetta, the Court specifically noted that "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." Id. Thus, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means" in order to constitute a denial of due process. Id. at 489. The burden of proving that lost or destroyed evidence is materially exculpatory and that the evidence cannot be obtained by other reasonable methods is placed on the defendant. See id. at 488-489; Columbus v. Forest (1987),36 Ohio App.3d 169, 171-172.
 {¶ 25} During the trial, Detective Francis testified that Spurlock showed him a receipt to explain why he had over $2,000 in his pocket. Although Detective Francis did not recall what exact amount the receipt reflected, he admitted that it could have been a four-figure dollar amount. However, Detective Francis did remember that the receipt was approximately three months old and that he gave it back to Spurlock rather than retaining it for evidentiary purposes.
 {¶ 26} A receipt for a certain dollar figure issued three months prior to a search of a suspect that uncovers a large sum of cash in that suspect's possession can hardly be expected to play a significant role in a suspect's defense absent some further explanation as to why he would still have this amount of cash some three months later. Thus, the detectives should not have expected that this receipt would play a significant role in Spurlock's defense. Furthermore, the police did not destroy the receipt or otherwise lose it. To the contrary, the receipt was given back to Spurlock, who could have retained it in order to aid in his defense had he expected that it would play a significant role in his defense. Thus, he has failed to demonstrate that this evidence was unobtainable by some other reasonable method as Trombetta requires. Therefore, the fifth assignment of error is overruled.
 {¶ 27} For these reasons, the judgment of the Common Pleas Court of Hancock County, Ohio, is affirmed.Judgment affirmed.
BRYANT, P.J., and WALTERS, J., concur.