JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Charles Benton, appeals from the judgment of the Common Pleas Court, rendered after a bench trial, finding him guilty of possession of drugs, with a firearm specification. Benton contends that his conviction on the firearm specification was not supported by sufficient evidence and was against the manifest weight of the evidence. He also contends that the trial court committed reversible error in admitting "other acts" testimony during his trial. For the reasons that follow, we affirm Benton's conviction.
 {¶ 2} The record reflects that in May 2002, the Cuyahoga County Grand Jury returned a nine-count indictment against Benton, charging him as follows: count four,[1] possession of drugs, in violation of R.C. 2925.11; count five, preparation of drugs for sale, in violation of R.C. 2925.07; count six, trafficking in drugs, with a juvenile specification, in violation of R.C. 2925.03;
 {¶ 3} count seven, possession of drugs with a firearm specification, in violation of R.C. 2925.11; count eight, preparation of drugs for sale, with both juvenile and firearm specifications, in violation of R.C. 2925.07; count nine, possession of drugs, with a firearm specification, in violation of R.C. 2925.11; count ten, preparation of drugs for sale, with both juvenile and firearm specifications, in violation of R.C.2925.07; count eleven, possession of criminal tools, in violation of R.C. 2923.24; and count twelve, possession of a dangerous ordnance.
 {¶ 4} Benton reached a plea agreement with the State and pled guilty to several of the charges. The trial court subsequently granted Benton's motion to withdraw his plea, however, and the matter proceeded to a bench trial.
 {¶ 5} The evidence presented at trial demonstrated that on April 19, 2002, a confidential reliable informant made a controlled buy at Benton's house and obtained heroin from an individual in the house. Several days later, an informant made another controlled buy at Benton's house and obtained crack cocaine. Detective Jeffrey Cook testified that during this buy, he waited in a car in the driveway after the informant went into the house. He observed Benton come out of the house, walk to the detached garage located 25 feet away from the house, get into a car parked in the garage, and then shortly thereafter, get out of the car and walk back into the house. A license plate check on the car indicated that it was registered to Benton's wife.
 {¶ 6} A day later, on April 25, 2002, members of the Southeast Area Law Enforcement Task Force executed a search warrant at Benton's home. The officers seized numerous items, including a sawed-off shotgun found in the basement rafters, a pistol-grip shotgun found in an upstairs bedroom, a machete, a stun gun, pagers and cell phones, pipes and pipe pieces, small ziplock baggies, and heroin.
 {¶ 7} Detective James Mendolera testified that the car previously determined to be registered to Benton's wife was in the garage when the search warrant was executed. When Mendolera searched the car, he found a small MM container that contained crack cocaine in the console between the front seats of the car. He also found a loaded .38 Derringer in the console.
 {¶ 8} Benton, who was inside his home at all times during the execution of the search warrant, was arrested. He subsequently gave a videotaped statement to the police, in which he admitted that the crack cocaine found in his wife's car was his and that he had put it there because he knew no one would ever look there. He also admitted that the gun found in the console of the car belonged to him.
 {¶ 9} The trial court subsequently acquitted Benton of counts four, five, six, seven, eight, ten and 12. The trial court found Benton guilty, however, of possession of crack cocaine, with a firearm specification, as charged in count nine, and guilty of possession of criminal tools, as charged in count 11. The court sentenced Benton to one year of community control on the underlying drug offense in count nine and the possession offense in count eleven. With respect to the firearm specification in count nine, the trial court sentenced Benton to a one-year mandatory term of incarceration pursuant to R.C.2929.14(D)(1)(a).
 {¶ 10} Benton now raises four assignments of error for our review.
 SUFFICIENCY OF THE EVIDENCE {¶ 11} In his first assignment of error, Benton argues that the State failed to present sufficient evidence to sustain his conviction on the firearm specification and, therefore, the trial court should have granted his motion for acquittal.
 {¶ 12} Crim.R. 29(A) provides, in part:
 {¶ 13} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 14} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 15} R.C. 2941.141, regarding the firearm specification, provides, in part:
 {¶ 16} "(A) Imposition of a one-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment * * * specifies that the offender had a firearm on or about theoffender's person or under the offender's control whilecommitting the offense." (Emphasis added.)
 {¶ 17} In finding Benton guilty of possession of crack cocaine, the trial judge noted that Benton had acknowledged in his videotaped statement that the cocaine found in his wife's car was his and, therefore, she concluded that Benton had constructive possession of the cocaine.[2] The trial judge similarly concluded that, due to his admission that the gun found in the car was his, Benton had constructive possession of the gun and, therefore, was guilty of the firearm specification.
 {¶ 18} Benton argues, however, that the trial court's application of constructive possession to the firearm specification was erroneous. He contends that the legislature[3] defined the "on or about the offender's person or under the offender's control" element of the firearm specification in Ohio Jury Instruction 413.37, which provides:
 {¶ 19} "`On or about his/her person' or `under his/her control' means that the firearm was either carried on the defendant's person or was so near the defendant's person as to be conveniently accessible within his/her immediate physical reach."
 {¶ 20} Therefore, Benton contends, the statute requires more than constructive possession of a firearm during the commission of an offense; it requires the State to prove that the offender had the firearm on his or her person or that the firearm was so close to the offender that it was immediately accessible. According to Benton, the State failed to prove the elements of the firearm specification in this case because it offered no evidence that he ever carried the gun or was in the car or ever closer than 25 feet to the gun on April 25, 2002, when the search warrant was executed and the drugs and gun were found. We are not persuaded.
 {¶ 21} In State v. Brown (1995), 107 Ohio App.3d 194, the Third Appellate District considered the same question presented by this appeal. In Brown, the defendant was convicted of drug possession, with a firearm specification, after the police executed a search warrant at the defendant's residence following a controlled buy. Like Benton, the defendant argued that the trial court should have dismissed the firearm specification because the gun was found between the mattress and boxspring in his bedroom, but he was lying on the couch in living room at the time of his arrest. Accordingly, he asserted, the gun was not about his person or under his control during the commission of the offense.
 {¶ 22} The Third District Court of Appeals disagreed. It found that the defendant's ownership of the gun was established by evidence that he lived at the address where the gun was found and that the bedroom where the gun and some of the money and drugs were found was his bedroom. In addition, the defendant's girlfriend testified that on a previous occasion, the defendant had struck her with the gun. The court also noted that one of the entry officers testified that the distance between appellant and the gun was a distance of ten to 12 feet and that the gun posed a threat to the officers because the defendant could have traveled the distance in less than a second. Accordingly, the court concluded that the trial court had not erred in denying the defendant's Crim.R. 29 motion for acquittal regarding the gun specification because there was evidence, if believed, to show the defendant's "control of the gun at some point during his possession of drugs." Id.
 {¶ 23} Similarly, in State v. Spurlock, Hancock App. No. 5-03-11, 2003-Ohio-6006, the defendant also argued that there was insufficient evidence to support his conviction for possession of drugs with a firearm specification. In Spurlock, law enforcement officers executed a search warrant at a home after learning that cocaine was being sold there. Upon entering the home, the police found the defendant and two other people in a bedroom, looking out the window. In addition to recovering money and drugs from some of the individuals, the police found a handgun on the nightstand in the bedroom. One of the police officers testified that the bed separating the window where the defendant was standing from the nightstand where the gun was recovered consisted of a boxspring and a mattress without any type of frame, so the defendant could have easily reached across the bed and grabbed the gun, had he chosen to do so.
 {¶ 24} In finding that there was sufficient evidence to support the firearm specification, the court noted that the undisputed testimony at trial indicated that the defendant had been seen with a gun on multiple occasions, including in the home where the search warrant was executed, and no evidence was presented linking the gun to anyone else. The court also noted that, given the small size of the bedroom and the lack of a bedframe in relation to the defendant's location when the police entered the room, the jury could have reasonably concluded that the defendant was in constructive possession of the gun.
 {¶ 25} Both Brown and Spurlock suggest that an offender can be found guilty of a firearm specification for an underlying drug possession offense even where the gun is not on the offender's person during the execution of a search warrant. We recognize, however, that Brown and Spurlock also suggest that the distance between the offender and gun during execution of the warrant must be relatively close in order to find the offender in possession of a firearm during commission of the underlying drug possession offense.
 {¶ 26} Indeed, Benton refers us to State v. Mills (Sept. 28, 1999), Franklin App. No. 98AP-1273, where the Tenth Appellate District concluded that there was insufficient evidence to support the defendant's conviction on a firearm specification because the distance between the defendant and the firearm when the police entered the defendant's home was too great to establish that the defendant had control of the gun. In Mills,
police executed a search warrant at the home of the defendant and his girlfriend, and found crack cocaine on the downstairs dining room table and various weapons in an upstairs bedroom. The defendant was arrested in the upstairs hallway, at the top of the stairs. He was not carrying any weapons when he was arrested. The defendant's girlfriend testified at trial that the drugs and firearms belonged solely to defendant.
 {¶ 27} In considering whether there was sufficient evidence to sustain the defendant's conviction on the firearm specification, the court noted that there was no evidence that the defendant had ever carried the weapon at any time pertinent to the case and, therefore, he could be found guilty of the firearm specification only if the handgun found on the dresser was under his control. The appeals court concluded that, unlikeBrown, supra, the firearm was not found in the same room with the drugs and the distance between the defendant and the firearm was far greater than ten to 12 feet. In addition, the court noted that the State had not introduced any evidence suggesting that the defendant, during execution of the search warrant, had ever entered the bedroom where the police discovered the firearm. Accordingly, the court concluded that there was insufficient evidence to demonstrate that the defendant had control of the firearm in the bedroom during the commission of the underlying drug possession offense.
 {¶ 28} Mills is distinguishable from this case, however. Here, the firearm and the crack were both found in the console of the car, within inches of each other. In addition, Benton admitted that both the crack and the gun belonged to him.
 {¶ 29} Moreover, we reject the assumption implicit in Brown,Spurlock and Mills that the underlying drug possession offense and corresponding firearm possession occurs only at the moment the police execute the search warrant. In State v. Powell
(1991), 59 Ohio St.3d 62, 63, the Ohio Supreme Court considered whether imposition of a firearm specification is proper where the firearm is not "used actively" in the commission of a felony.[4] The Court found that the firearm specification statute "does not require that the firearm be used in the commission of the felony, or that the defendant acquire the firearm before beginning the crime; all that is necessary is that the defendant have the firearm on his person or under his controlat some point during the commission of the crime." (Emphasis added.)
 {¶ 30} Here, it is apparent the Benton was in possession of both the cocaine and the gun before the police arrived at his home to execute the warrant. Thus, although the gun was not carried on his person or even immediately accessible to him when the police executed the warrant, Benton's admission that the gun belonged to him was likewise an admission that he had control of the gun "at some point" during the commission of the underlying drug possession offense. His admission, coupled with the fact that the gun was found within inches of the drugs, compels this conclusion. Without such an admission, we might reach a different result on this issue. Finally, we note that "the underlying purpose of the gun specification [is] to deter possession or control of firearms during the commission of crimes due to the safety hazards such possession or control poses to the public and arresting officers." Mills, supra, citing State v. Powell
(1991), 59 Ohio St.3d 62, 63. Given that purpose, and in light of his admission that the gun belonged to him, it is apparent that Benton had sufficient control over the firearm during the commission of the underlying drug possession offense to pose a threat, if not to the arresting officers, to the public. This is specially significant in light of the drug trafficking that was occurring at Benton's home. Although Benton was not convicted of drug trafficking, one codefendant, who was a tenant at Benton's home, pled guilty to drug trafficking and two other codefendants pled guilty to possession of drugs.
 {¶ 31} Construing the evidence in a light most favorable to the prosecution, we hold that a rational finder of fact could have found that Benton had a firearm under his control during the commission of the underlying drug possession offense. Therefore, the evidence was sufficient as a matter of law and the trial court did not err in denying Benton's Crim.R. 29 motion for acquittal.
 {¶ 32} Appellant's first assignment of error is overruled.
 {¶ 33} MANIFEST WEIGHT OF THE EVIDENCE
 {¶ 34} In his second assignment of error, Benton contends that his conviction on the firearm specification was against the manifest weight of the evidence.
 {¶ 35} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins (1997), 78 Ohio St.3d 380, 390. When a defendant asserts that his or her conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Otten (1986), 33 Ohio App.3d 339, 340. Here, after reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the judge, as trier of fact, lost her way and created such a miscarriage of justice that Benton's conviction on the firearm specification must be reversed. As discussed earlier, Benton admitted that both the crack cocaine and gun found in the console of the car belonged to him. This is substantial evidence from which the judge could have concluded, beyond a reasonable doubt, that Benton had the gun under his control at some point during commission of the underlying drug possession offense.
 {¶ 36} Appellant's second assignment of error is overruled.
 {¶ 37} "OTHER ACTS" TESTIMONY
 {¶ 38} In his third assignment of error, Benton contends that he was prejudiced by the admission of various irrelevant and inflammatory evidence of "other acts."
 {¶ 39} Evid.R. 404(B) states:
 {¶ 40} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 41} Evidence of crimes or other acts is admissible only when it is relevant to one of the matters listed in the rule, such as motive or intent. State v. DeMarco (1987),31 Ohio St.3d 191, 194. "The principle underlying Evid.R. 404(B) is that evidence of other acts is simply so prejudicial that to allow it outweighs its value as relevant evidence." State v. Prokos
(1993), 91 Ohio App.3d 39, 43. Benton contends that he was prejudiced by various testimony from the State's witnesses regarding the items recovered from his home by the police when the search warrant was executed; specifically, a newspaper clipping regarding a recent drug raid at a nearby home, pagers and cellphones, a machete knife, a three-blade knife, shotgun shells, an ammunition magazine for a .223 rifle, a stun gun, a sawed-off shotgun, a pistol-grip shotgun, small ziplock baggies, pipes and pipe pieces, a DVD player, six speakers, a camcorder and GameBoy games. He also contends that the trial court erred in admitting these items into evidence. Benton's argument fails.
 {¶ 42} In a criminal case in which a defendant-appellant alleges that it was reversible error to allow the trier of fact to hear certain testimony, the reviewing court must first determine if it was error to allow the trier of fact to hear the testimony and, if so, whether such error was prejudicial or harmless. State v. Davis (1975), 44 Ohio App.2d 335, paragraph three of the syllabus.
 {¶ 43} Assuming, without deciding, that it was error for the alleged "other acts" testimony and exhibits to be admitted into evidence, we find no prejudice to Benton. The record demonstrates that he was convicted of count nine, the count for which he admitted to possessing the drugs and the firearm. Thus, the admission of the "other acts" testimony and exhibits was irrelevant to this count.
 {¶ 44} Benton was also convicted of count eleven, possession of criminal tools. In finding him guilty of this count, the judge, as trier of fact, stated:
 {¶ 45} "Going back to Count 11, the possession of criminal tools. The court does find that the crack cocaine, the Derringer that I just mentioned, the defendant admits on the tape, videotape, that the crack and the gun is his, he admits he knows it's in the car, and court finds that the 1993 Honda has been used as a criminal tool in the commission of the felony, that felony being the possession of the crack cocaine. So, therefore, the court finds that the defendant is guilty of Count 11, possession of criminal tools, beyond a reasonable doubt."
 {¶ 46} It is clear from the record that none of the items to which Benton objects were relevant to his conviction on this count. The judge specifically stated that the only criminal tool of which she found Benton in possession was the car in which the drugs and gun were found. Thus, Benton's argument that he was unfairly prejudiced by the alleged "other acts" testimony runs contrary to the results of his trial.
 {¶ 47} Appellant's third assignment of error is therefore overruled.
 DENIAL OF DUE PROCESS {¶ 48} In his fourth assignment of error, Benton argues that he was denied due process because the exhibits are missing from the record and, therefore, the trial court failed to provide a complete record for appellate purposes. This assignment of error is moot because the missing exhibits were located by the parties and the record was properly supplemented.
 {¶ 49} Appellant's fourth assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, P.J., and Karpinski, J., Concur.
[1] Counts one, two and three of the indictment did not relate to Benton.
[2] Possession can be actual or constructive. See State v.Wolery (1976), 46 Ohio St.2d 316, 329; State v. Haynes (1971),25 Ohio St.2d 264, 267; State v. Barr (1993),86 Ohio App.3d 227, 235. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession. State v. Hankerson (1982),70 Ohio St.2d 87, at the syllabus.
[3] Ohio Jury Instructions are not promulgated by the Ohio legislature; they are prepared by the Jury Instructions Committee of the Ohio Judicial Conference.
[4] The Supreme Court considered this question as it related to former R.C. 2929.71, which provided for an additional three years of incarceration for offenses involving a firearm. R.C. 2929.71
has since been repealed; analogous sentencing provisions are now contained in R.C. 2929.14.