[Cite as *State v. Lewis*, 2017-Ohio-4300.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104909**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ANDRE D. LEWIS, JR.

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED IN PART; VACATED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605539-A

**BEFORE:** Jones, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** June 15, 2017

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Anna Woods
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Andre Lewis, appeals the trial court's denial of his motion to suppress and his conviction and sentence for trafficking of drugs with a one-year firearm specification, possession of drugs with a one-year firearm specification, carrying concealed weapons, improperly handling firearms in a motor vehicle, having weapons while under disability, and possession of criminal tools. For the reasons that follow, we affirm Lewis's convictions but vacate his sentence and remand for resentencing.

{¶2} In 2016, Lewis was charged with the crimes as stated above. He filed a motion to suppress, which the trial court denied after a full hearing. The matter proceeded to a bench trial. The following pertinent evidence was presented at the suppression hearing and bench trial.

{¶3} Cleveland police officers Patty Katynski and Joshua McCoy were on patrol when they conducted a random registration check on a Chevrolet Equinox. The check revealed that the owner of the car had a suspended license. In comparing the registration picture to the driver of the vehicle, they determined that Lewis was both the driver and owner of the car.

{¶4} The officers conducted a traffic stop and told Lewis he was under arrest for driving with a suspended license. The officers asked Lewis's passenger for identification and found out that his passenger also did not have a valid driver's license; therefore, the car would have to be towed because no one was present who could legally

drive it.

{¶5} Officer McCoy searched Lewis pursuant to arrest and found a small folded piece of paper in Lewis's front pants pocket; Lewis told Officer McCoy that it was "Molly," a street name for the drug MDMA.

{¶6} Officer McCoy testified that departmental policy requires him to search a vehicle prior to towing it. Pursuant to the policy he must determine if a car contains a battery, radiator, engine, air conditioning, radio, tape player, CD player, keys, and transmission, and he cannot have the car towed until he has completed the Vehicle/Tow Supplement Form.

{¶7} Officer McCoy searched the car and testified that he "popped" the hood as part of his search for the battery, radiator, and engine. He saw, in plain view, the handle of a handgun sticking up from the hood next to a damaged air filter. Officer Katynski also observed the gun next to the air filter. The officers radioed for a supervisor to take photos of the gun, and the gun was removed from the car. The gun was loaded and operable. The officers also located a jar of suspected marijuana and plastic baggies.

{¶8} Lewis admitted to the police that the contraband and gun were his.

{¶9} The trial court found Lewis guilty of all charges and specifications. During the sentencing hearing, the court told Lewis that it was sentencing him to a total of three years in prison. The sentencing journal entry also stated that Lewis was being sentenced to a total of three years in prison by running the three-year firearm specification concurrent to the crime of having weapons while under disability.

{¶10} Lewis now appeals, raising the following assignments of error for our review:

> I.   The trial court erred by denying Appellant's motion to suppress where the search of his vehicle exceeded the scope of a permissible warrantless search in violation of his constitutional rights.
>
> II.   The trial court erred by denying Appellant's Crim.R. 29 motions because Appellant's convictions were based on insufficient evidence.
>
> III.   Appellant's convictions were against the manifest weight of the evidence.
>
> IV.   Appellant's sentence is contrary to law and was imposed in violation of his Sixth Amendment rights.

{¶11} In the first assignment of error, Lewis argues that the trial court erred in denying his motion to suppress.

{¶12} This court reviews a decision on a suppression motion under a mixed standard of review.   "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility."   *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The reviewing court must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence.   *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶13} The Fourth Amendment of the United States Constitution, as well as Article I, Section 14, of the Ohio Constitution, prohibit unreasonable searches and seizures absent probable cause.   This includes the stop of automobiles and the seizure of its occupants.   *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979),

paragraph two of the syllabus. But where an officer stops a motorist after observing a violation of a traffic law, probable cause exists for the detention in order to issue a citation. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996).

{¶14} The United States Supreme Court has held that the Fourth Amendment is not violated by a warrantless, routine, inventory search of an impounded automobile where the inventory search was not a pretext concealing an investigatory motive and the inventory search was not unreasonable in scope. *South Dakota v. Opperman*, 428 U.S. 364, 375-376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

{¶15} Lewis does not challenge the initial stop nor does he challenge the pat-down search. In this assignment of error, Lewis solely focuses on the gun that was found as a result of the inventory search and the statements he made to the police following its discovery.

{¶16} In his motion to suppress challenging the validity of the inventory search of his vehicle and on appeal, Lewis argues that the inventory search was (1) a pretextual search concealing an investigatory police motive; (2) conducted outside the scope of the limited exception of an inventory search; and (3) was not part of any standardized police procedure. In ruling on the motion to suppress, the trial court disagreed, ultimately determining that the search was lawful pursuant to the inventory exception.

{¶17} Lewis claims that Officer McCoy's decision to search the hood of the vehicle was investigative, rather than administrative, because the officer was unable to point to specific police policy that required him to search under the hood of a car prior to

towing it and because he testified that he commonly finds weapons under the hood of vehicles he searches.

**{¶18}** To support his position, Lewis cites this court's decision in *State v. Woods*, 2012-Ohio-5509, 982 N.E.2d 1305, ¶ 24 (8th Dist.), where this court upheld a trial court's granting of a motion to suppress based on facts that Lewis claims are similar to this case. In *Woods*, two Cleveland police officers visually paced the defendant for two blocks and determined he was exceeding the posted speed limit. The officers conducted a traffic stop, patted the defendant down, found a bag of marijuana on his person, and found additional marijuana in the trunk of the car. As part of the search incident to tow, one of the officers lifted the hood of the defendant's car, "[j]ust to make sure everything's there that's supposed to be there." *Id*. at ¶ 8.

**{¶19}** The trial court found, and this court agreed, that the police lacked probable cause for the initial stop based on their visual estimation of the defendant's speed and, therefore, the ensuing search of his person and vehicle were illegal. *Id.* at ¶ 24. This court also deferred to the trial court's findings and conclusions that:

> the "[t]estimony of the officers that the search was an inventory search of the vehicle was tantamount to a tow is disingenuous and merely a pretext for the claimed inventory," and "the search of the trunk and most [s]uspiciously, the hood, along with the officer's failure to list all of the vehicle's contents on the inventory list suggests that the search of the vehicle was neither incidental to a tow nor for the purposes of inventory."

*Id.* at ¶ 25.

**{¶20}** This court concluded that the case was "a classic example of a police officer's intentional use of an unlawful traffic stop * * * for the sole purpose of

conducting a fishing expedition for evidence of another crime, and a tailored script at the motion to suppress hearing to justify the stop and subsequent searches." *Id.*

{¶21} Contrary to Lewis's argument, *Woods* is distinguishable from this case. In *Woods*, the stop itself was illegal. Here, Lewis is not challenging the initial stop. But like *Woods*, we defer to the trial court who judged the credibility of the witnesses. ("Even if we found that the officers validly stopped Woods for speeding, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses." *Woods* at *id.*).

{¶22} Officer McCoy testified that he conducts an inventory search because "when we tow that vehicle we're responsible for that vehicle. And let's say there was personal items that were valuable and if it wasn't listed and it ended up missing, we would be responsible for it." Officer McCoy explained that Lewis's car had to be towed because there was no one present who could legally drive it and it had to be removed from the roadway. He further testified that once he completed the inventory of the interior of the car, he "had to confirm there was a battery and all equipment underneath the hood of the vehicle," that it was "standard" to do so, and that for every vehicle he tows "that's the last thing that I do is inventory underneath the hood."

{¶23} Contrary to Lewis's assertion that the officers were unable to point to any specific police policy that requires him to search under the hood of a car prior to towing it, it was the defense that entered that policy itself into evidence. Defense Exhibit A, GPO[1] 8.2.01, revised May 30, 2003, stated, in part:

---

[1] General Police Order

**PURPOSE**: To establish guidelines for towing or releasing motor vehicles

**POLICY:** The Cleveland Division of Police shall ensure that motor vehicles are properly towed.

**PROCEDURES:**

I.   Vehicle Tow Supplement

A.   Use the Vehicle/Tow Supplement Form (Appendix A) to tow privately owned

vehicles.

{¶24} The state entered the Vehicle/Tow Supplement Form from the incident into evidence. The form contains several sections. The section titled "Tow Information" has check boxes to record the condition of the car and property inventory. The section titled "Vehicle Parts" contains check boxes for "battery," "radiator," "engine," "a/c," "radio," "tape," "keys," and "trans." (transmission). The officers checked boxes for engine, keys, and trans., completed the form, and signed and dated it. On cross-examination, Officer McCoy testified that he completed the tow form "to determine 'whether all the equipment that we're required to list on the tow sheet was there.' And on the

tow sheet, [equipment under the hood is] listed."

{¶25} Thus, based on the GPO and Vehicle/Tow Supplement Form the parties entered into evidence and the testimony provided at trial, the officers were justified in checking the area under the hood as part of the inventory search on Lewis's car before it was towed.

{¶26} In light of these facts, the trial court did not err in denying the motion to suppress. The first assignment of error is overruled.

{¶27} In the second assignment of error, Lewis argues that his convictions were not supported by sufficient evidence. In the third assignment of error, he argues that his

convictions were against the manifest weight of the evidence. Although the concepts of manifest weight and sufficiency of the evidence involve different standards of review, we discuss them together because the evidence is the same for both.

{¶28} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense; Crim.R. 29(A) and a sufficiency of the evidence review require the same analysis. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 651 N.E.2d 965 (1995).

{¶29} Unlike a claim involving sufficiency of the evidence, when reviewing a challenge to the manifest weight of the evidence, this court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence is reserved for only the exceptional case in which the evidence weighs heavily

against the conviction. *Id.* It is not the function of an appellate court to substitute its judgment for that of the trier of fact. *Jenks* at 279; *State v. Schultz*, 8th Dist. Cuyahoga Nos. 102306 and 102307, 2015-Ohio-3909, ¶ 35.

{¶30} Lewis challenges his convictions on the firearm specifications and for trafficking in drugs. The one-year firearm specifications in this case apply when "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.141(A). As to the firearm specifications, Lewis claims that there was insufficient evidence that the gun found under the hood of his car was within close enough proximity of him when he was arrested to qualify under R.C. 2941.141(A). But this court has consistently upheld convictions for firearm specifications when a firearm was around or in close proximity to drug-related offenses. *See State v. Benton*, 8th Dist. Cuyahoga No. 82810, 2004-Ohio-3116 (upholding firearm specification where the defendant was arrested in his home and drugs and a firearm were found in wife's car in detached garage); *State v. White*, 8th Dist. Cuyahoga No. 82495, 2004-Ohio-228 (affirming conviction for drug trafficking with a one-year firearm specification when firearm was located in a bedroom of the house); *State v. Easterly*, 8th Dist. Cuyahoga No. 94797, 2011-Ohio-215 (upholding firearm specification where defendant was arrested in one part of building and drugs and a gun were found in defendant's office).

{¶31} In this case, Lewis admitted both the drugs in the car and gun under the hood were his. Officer McCoy testified that it would have taken "mere seconds" for

Lewis to retrieve the gun from under the hood. Thus, the evidence is sufficient to meet the elements of the firearm specifications.

**{¶32}** Lewis also states that there was insufficient evidence that he was trafficking in drugs because of the small amount of drugs found on him and the police did not see him drug trafficking. But Officer McCoy testified that the police recovered a gun, marijuana, MDMA, a scale and plastic baggies, and in his training and experience a gun is used for protection while someone is selling drugs, a scale is used to weigh the narcotics, and the baggies are used to package the narcotics for sales.

**{¶33}** In light of the above facts, we find sufficient evidence to sustain the convictions and, further, that the convictions were not against the manifest weight of the evidence. Therefore, the second and third assignments of error are overruled.

**{¶34}** In the fourth assignment of error, Lewis challenges the sentence imposed by the trial court. We find merit to this assignment of error.

**{¶35}** During the sentencing hearing, the trial court stated that it was imposing a total term of three years in prison, running the firearm specification concurrent to the underlying count and the other counts.

**{¶36}** The sentencing journal entry states as follows:

The court imposes a prison sentence at the Lorain Correctional Institution of 3 year(s). The 1 year firearm specification in Counts 1 and 2 merge for purposes of sentencing. State elects to sentence on the firearm specification on Count 1. Defendant sentenced to 1 year on firearm specification to be served prior to and consecutive to 10 month sentence on Counts 1; 10 months on Count 2; 1 year on Counts 3 and 4; 3 years on Count 5 and 10 months on Count 6. Sentences to run concurrent to each

other for a total confinement of 3 years.[2]

**{¶37}** R.C. 2929.14(C)(1)(a) provides that if a mandatory prison term is imposed for a firearm specification, that prison term "shall" run "consecutively to and prior to any prison term imposed for the underlying felony * * * and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender." Thus, the firearm specification must run prior to and consecutive to all other counts. The trial court sentenced Lewis to three years for having weapons while under disability. Because the firearm specification in Count 1 must run prior to and consecutive to his three-year sentence on Count 5, his actual sentence totaled four years in prison. The state concedes the error.

**{¶38}** Again, at the sentencing hearing, the trial court told Lewis it was sentencing him to three years in prison by running the one-year firearm specification concurrent to the other counts, but, by operation of law, the firearm specification must run consecutive to his other convictions. The journal entry stated that the firearm specification was to run prior to and consecutive to the other counts; however, it also stated the total prison sentence was to be three years in prison.

**{¶39}** Pursuant to R.C. 2953.08(G)(2), this court may "increase, reduce, or

---

[2]Lewis was convicted of the following counts:

> Count 1: trafficking in drugs, one-year firearm specification; Count 2: possession of drugs, one-year firearm specification; Count 3: carrying concealed weapons; Count 4: improperly handling firearms in a motor vehicle; Count 5: having weapons while under disability; Count 6: possessing criminal tools.

otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing" if we clearly and convincing find that the sentence is "otherwise contrary to law." R.C. 2953.08(G)(2)(b). We find that Lewis's sentence is contrary to law. Thus, under R.C. 2953.08(G)(2), we vacate Lewis's sentence and remand for resentencing.

{¶40} Convictions affirmed; sentence vacated and remanded for resentencing.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR