OPINION
{¶ 1} Defendant-Appellant, Daniel P. McKinney, pro se, appeals the January 23, 2004 judgments and sentence of the Defiance County Common Pleas Court following a conviction of robbery, aggravated theft, and receiving stolen property, and two counts of failure to comply with order or signal of a police officer.
 {¶ 2} On June 12, 2003, Donald Smith, the Key Bank customer relations manager in Defiance, Ohio, received a telephone call from an unidentified male. The caller asked Smith if the bank would be open after business hours in order for the caller to make a large sum, cash deposit. Smith informed the caller that he may deposit the cash shortly after the bank closed.
 {¶ 3} At approximately 4:05 p.m., a man wearing a business suit, a fedora hat, and carrying a briefcase approached the bank door. After confirming the male as the caller wanting to deposit a large amount of cash, Smith unlocked the door and let him into the bank. Once inside, the male, later identified as the defendant-appellant, pulled a wire from beneath his jacket lapel and instructed Smith that he was wired with explosives. He also stated that an accomplice was outside waiting to detonate on his orders.
 {¶ 4} At the defendant's instructions, Smith escorted him to the bank's vault area. Inside the vault, the defendant grabbed an empty coin bag and ordered Smith to give him the money. Consequently, Smith opened two vault drawers and stuffed the coin bag with $100, $50, $20, and $10 bills. Included in the cash were five $20.00 bills the bank had documented as "bait" money.
 {¶ 5} Meanwhile, Sharon Washington, a teller, silently walked to the vault in an attempt to see what was occurring. Another teller, Victoria Derrer, who witnessed Smith and the defendant walk to the vault area, attempted to look on the video surveillance unit to see what was happening in the vault. Recognizing that no one was standing in the vault's public area, both Washington and Derrer realized that the bank was being robbed, so Washington called 911. Immediately thereafter, the defendant left the bank. Smith exited the vault and instructed another employee to pull her "bait" money out of her cash drawer to trigger the alarm.
 {¶ 6} Officers spotted the fleeing defendant within a short vicinity of the bank. They immediately attempted to stop the vehicle after initiating their emergency lights and sirens, but the defendant did not respond. In the attempt to get away, the defendant swerved into another lane of traffic almost striking the pursuing cruiser. As a result, the officer lost sight of the defendant's vehicle. Other officers, however, joined in the pursuit after being alerted of the defendant's position by citizens who were forced off the road. As the pursuit continued to the Defiance city outskirts at speeds approaching 110 m.p.h., the defendant lost control of his vehicle as he swerved in and out of the traffic lanes. Able to regain control, the defendant avoided an attempt by pursuing police to "box" him in.
 {¶ 7} As the pursuit left Defiance County and entered Paulding County, waiting deputy sheriffs attempted to employ stop stick devices, but those failed. Thereafter, the defendant entered a driveway, but did not stop. Instead, he entered the yard, drove around the house, and reentered the roadway. Finally, another officer, awaiting the defendant's vehicle, proceeded to hit the rear of the defendant's car causing it to spin into a ditch. The defendant exited the vehicle, a foot chase pursued, but the defendant was apprehended. Soon thereafter, he was cuffed, taken into custody, read his Miranda rights, and identified as Daniel P. McKinney. All of the money taken from the bank, including the "bait" money, was found in McKinney's vehicle. In all, he had stolen $104,107.00.
 {¶ 8} On June 16, 2003, the defendant made his initial appearance in the Defiance Municipal Court on a charge of robbery in violation of R.C. 2911.02(A)(2), and bond was set. Subsequently, on June 18, 2003, the defendant again appeared in that same court, signed a written waiver of his right to a preliminary hearing and was bound over to the Defiance County Grand Jury.
 {¶ 9} On July 7, 2003, the Defiance County Grand Jury indicted the defendant on five counts: robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(2); aggravated theft, a felony of the third degree, in violation of R.C.2913.02(A)(1) and (4); receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51(A); failure to comply with order or signal of police officer, a felony of the third degree in violation of R.C. 2921.331(C)(5)(a)(ii); and failure to comply with an order or signal of police officer, a felony of the fourth degree, in violation of R.C. 2921.331(C)(4).
 {¶ 10} On July 16, 2003, the Defendant appeared in the Defiance County Court of Common Pleas for arraignment, but without counsel. The defendant was advised of his right to appointed counsel, but chose to proceed pro se with the assistance of a court appointed attorney. James S. Borland was appointed to assist the defendant. The defendant entered "Not Guilty" pleas on all counts and the court set a July 31, 2003 pre-trial date.
 {¶ 11} On July 17, 2003 Borland filed requests for a bill of particulars and for discovery on the defendant's behalf. On July 22, 2003, the defendant filed a pro se request for discovery, bill of particulars, and severance of charges, as well as a motion to dismiss. The State's discovery response and the bill of particulars were filed on July 30, 2003.
 {¶ 12} At the July 31, 2003 pre-trial conference, the defendant requested a continuance claiming that the State and his attorney, Borland, failed to provide the defendant with adequate legal research and video evidence in the possession of the prosecutor. The court granted the defendant's motion for a continuance after he acknowledged that his speedy trial time would be tolled.
 {¶ 13} The court reconvened on August 13, 2003. It denied the defendant's motion to dismiss stating lack of evidentiary support. Moreover, the court also overruled the defendant's motion for severance of charges. The defendant, however, objected again that he had not received adequate legal research and discovery. Specifically, the defendant requested the videotape evidence from the police cruisers and the names of the officers who arrested him. The court set the trial date for September 15, 2003.
 {¶ 14} On August 13, 2003, August 26, 2003, and September 10, 2003, the State filed supplemental discovery information. On August 16, the defendant filed a motion to appoint an investigator, which was granted. Subsequently, on August 27, 2003, Borland filed a motion to withdraw. The motion was granted that same day.
 {¶ 15} Another pre-trial was held on August 29, 2003. The defendant began by stating he felt Borland was ineffective because he (McKinney) did not receive sufficient legal research tools to develop an adequate defense. Second, the defendant requested that he be granted more access to the private investigator, which was granted. Third, the defendant, again, stated that the State was not forthcoming in its discovery. Specifically, the defendant stated he had not received a videotape copy of a Paulding County Sheriff's car or an audio copy of the 911 tape. Furthermore, the defendant claimed that he was being denied access to forensic evidence (i.e. a partial fingerprint). In response, the State indicated that it did not have possession, or know about the Paulding County Sheriff's videotape. Also, the State indicated that it would make a copy of the 911 tape and give it to the defendant. Finally, after excusing Borland from assisting him, the defendant signed a written waiver of counsel in open court.
 {¶ 16} On September 15, 2003, the defendant filed a motion for a change of venue, which was heard and denied subject to renewal if the court was unable to impanel a jury. The defendant also filed a motion to dismiss based on a violation of speedy trial time. That motion was also overruled. The defendant then orally requested a continuance, which was denied. Then, the defendant again noted that he was still seeking some allegedly discoverable material — i.e. the 911 tape, an auditor's report regarding the exact amount of money taken, and a list of every officer present at the time of the defendant's arrest. Next, the defendant requested the court to appoint another attorney. After taking it briefly under advisement, the court appointed John P. Goldenetz as the defendant's new attorney. Finally, the defendant signed a written waiver of speedy trial, and the court vacated the scheduled trial.
 {¶ 17} On December 8, 2003, the court granted a pending motion for Goldenetz to withdraw as counsel. The defendant, therefore, elected to proceed pro se. The court again advised the defendant of the dangers of representing himself, but the defendant elected to proceed. Next, the defendant filed a motion to dismiss alleging his right to a speedy trial was violated. This was denied because the defendant previously waived his speedy trial rights. Then, the defendant requested a continuance, which the court granted because of the attorney discharge and the defendant's desire to issue subpoenas. The court then rescheduled the jury trial for January 20, 2004.
 {¶ 18} On January 6, 2004, the court overruled the defendant's motion to suppress an identification based on a photograph because the court concluded that no photograph was actually given to any witnesses. Moreover, the court ordered the Clerk of Court to prepare and file subpoenas for the witnesses the defendant requested.
 {¶ 19} On January 20, 2004, a pool of possible jurors was convened. The defendant appeared pro se. First, he filed a challenge to array of petit jurors, which was denied. The court also overruled the defendant's request for a change of venue. Furthermore, the defendant stated that he was concerned because the jury pool did not contain any African-American jurors. After a jury was assembled, the case proceeded to trial.
 {¶ 20} During the trial, the defendant moved for two judgments of acquittal, which were both denied. After four days of trial testimony, the jury retired on January 23, 2004. Later that evening, the jury found the defendant guilty on all five counts. The defendant subsequently filed a motion for a new trial, which was denied. This appeal followed, and appellant alleges three assignments of errors.
 First Assignment of Error Appellant was denied his constitutional and statutory right toa speedy trial where the state failed to bring appellant to trialpursuant to the provisions of R.C. 2945.71-R.C. 2945.73.
 {¶ 21} The Sixth Amendment of the United States Constitution as applied to the States through the Fourteenth Amendment, as well as Article I, Section 10 of the Ohio Constitution dually afford a defendant the right to a speedy trial. In Ohio, the right to a speedy trial is also statutorily defined. Ohio Rev. Code §§ 2945.71-2945.73. Specifically, Ohio Revised Code2945.71(C)(2) states that a person who is charged with a felony must be brought to trial within 270 days after the arrest. The day of arrest of does not count when computing a speedy trial violation. See State v. Reed (Oct. 21, 1999), 3rd Dist. No. 5-99-25, unreported; Crim. R. 45(A). When computing the time within which a defendant must be brought to trial, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). Time is tolled, however, if the defendant initiates certain actions in the Court. Ohio Revised Code 2945.72 states, in pertinent part, that
[t]he time within which as accused must be brought to trial,or, in the case of felony, to preliminary hearing and trial, maybe extended only by the following:
 (C) Any period of delay necessitated by the accused's lack ofcounsel, provided that such delay is not occasioned by any lackof diligence in providing counsel to an indigent accused upon hisrequest as required by law;
 (E) Any period of delay necessitated by reason of a plea inbar or abatement, motion, proceeding, or action made orinstituted by the accused;
 (H) The period of any continuance granted on the accused's ownmotion, and the period of any reasonable continuance grantedother than upon the accused's own motion. . . .
R.C. §§ 2945.72(C), (E), (F), and (H).
 {¶ 22} The tolling events set forth, supra, "do not unconditionally extend the time limit in which an accused must be brought to trial, but, rather, this limit is `merely extended by the time necessary in light of the reason for the delay.'" Statev. Arrizola (1992), 79 Ohio App.3d 72, 75, 606 N.E.2d 1020
(citing Committee Comment to H.B. 511).
 {¶ 23} Here, the defendant was arrested on June 12, 2003. His speedy trial time, therefore, began on June 13, 2003. Since the defendant was incarcerated the entire time he was awaiting trial, the law required him to be brought to trial no later than September 10, 2003, or 90 days after the arrest. The defendant waived his right to a speedy trial on September 15, 2003, via a written and verbal waiver reflected in the following exchange on the record:
The Court: Do you understand that if I do continue this atyour request that for all practical purposes waives any speedytrial argument you may have?
 Mr. McKinney: Yes.
Trial Hearing Tr. (Sept. 15, 2003) at 25.[1]
 {¶ 24} Thus, the period of time from September 15, 2003 to the trial date of January 20, 2004, is not chargeable against the State. The period of time we must be concerned with, therefore, is the ninety-five days from the arrest to the waiver on September 15, 2003.
 {¶ 25} After reviewing the record, we find that the defendant's speedy trial rights were not violated. First, the forty days elapsing between June 13, 2003 and July 22, 2003 count against the speedy trial time. However, the nine days elapsing from July 22, 2003 to July 31, 2003 are tolled because the defendant filed a request for the bill of particulars, as well as a motion for severance of charges and a motion to dismiss. SeeState v. Brown (2002), 98 Ohio St.3d 121, 124, 781 N.E.2d 159
(holding that defendant's discovery request toll speedy trial time); R.C. 2945.72(E). Moreover, at the July 31, 2003 pre-trial hearing, the defendant requested a continuance until August 13, 2003; therefore, those thirteen days also are tolled. See R.C.2945.72(H). The thirty-three days elapsing from August 13, 2003 to September 15, 2003 does count against the State. The total time, therefore, counted against the State after factoring in the tolled time between June 13, 2003 and September 15, 2003 is seventy-three days. Since this number falls within the statutorily required ninety days, we find that the defendant's first assignment of error to be without merit.
 Second Assignment of Error APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESSAND A FAIR TRIAL WHERE THE STATE FAILED TO PROVIDE A FULL ANDFAIR DISCOVERY, AND AS THE RESULT OF PROSECUTORIAL MISCONDUCT[sic].
 {¶ 26} In this assignment of error, the defendant alleges his right to a fair trial was violated because the State failed to furnish certain items in discovery. Specifically, the defendant identified six items that were not presented to him and, therefore, amounted to a constitutional violation, which was the result of prosecutorial misconduct. They were:
(1) names/identities of those persons eyewitness [sic] toarrest of appellant known to the prosecution/police and thoserelevant statements thereof; (2) videotape of car number 639,which provided actual footage of arrest of appellant [sic] whichno other video portrayed and went directly toward impeachment ofstate's key witnesses [sic]; (3) 9-1-1 audiotape of policedispatch; (4) documentary records relevant to chain oftransmission of currency evidence; (5) statements relevant toelement of force (i.e. explosive, gun, weapon, etc.) necessaryfor element of robbery count, where there existed conflictingreports of what was initially stated by bank manager DonaldSmith; and (6) latent fingerprint evidence amount that forensicdiscovery refused appellant [sic] by the [S]tate.
Appellant's Brief at 17.
 {¶ 27} The United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon requests violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland
(1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. Additionally, the Criminal Rules require that the prosecutor disclose "all evidence . . . favorable to the defendant and material either to guilt or punishment." Crim. R. 16(B)(1)(f). The principles outlined in Brady, however, do not apply "unless the evidence is material to mitigation, exculpation or impeachment." State v. Keene (1998), 81 Ohio St.3d 646, 651,693 N.E.2d 246 (citing Calley v. Callaway (5th Cir. 1975),519 F.2d 184, 221). Moreover, this Court has stated that "[i]n determining whether the prosecution improperly suppressed evidence favorable to the accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v. Yarbrough (Apr. 30, 2001), 3rd Dist. No. 17-2000-10, 2001 WL 454683 at *8, unreported. "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. Furthermore, Criminal Rule 16(c) states that the prosecution must disclose all documents and tangible things "available to or in the possession, custody or control of the state and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant." Crim. R. 16(c). That rule also provides that the names and addresses of all witnesses the State intends to call at trial must be disclosed to the defendant. Crim R. 16(e).
 {¶ 28} In the case sub judice, the record reflects that the State granted all of the defendant's discovery requests for items it had in its possession and planned to use at trial.
 {¶ 29} The record reflects that the defendant requested the videotape in question in order to impeach the State's police officers called as witnesses, as well as elicit testimony about possible abuse while the defendant was being placed into custody. Appellant's Reply Brief at 5; Trial Tr. at pp. 482-489. First, and at the outset, it should be noted that any alleged physical abuse from police officers would have been irrelevant to any of the specified crimes indicted in this case and the defendant was not cited for resisting arrest. Second, in an attempt to obtain the videotape, the defendant alleges that he subpoenaed the Sheriff's deputy who drove the cruiser that contained the videotape and requested that he bring the tape with him to trial; however, the subpoena issued to him does not state this request. Finally, the State offered several police witnesses and videotapes from other cruisers at the scene, which depicted the defendant's arrest. Any impeachment evidence or evidence of police misconduct while arresting the defendant could have been brought out on cross-examination of those witnesses.
 {¶ 30} Similarly, the record does not provide any support for "latent fingerprint evidence." In fact, the State, in response to this request, announced that "no such evidence existed." Appellee's Brief at 16. Moreover, the State did disclose the names and addresses of all witnesses it planned to call at trial, which left the defendant with the full and open opportunity to cross examine all witnesses with regards to chain of custody and the State's burden of proof. This leaves the 9-1-1 tape.
 {¶ 31} The record does not reflect the contents of the 9-1-1 tape. In fact, the Prosecutor stated that he never listened to the tape, and, as a result, did not use it at trial. Since the State, therefore, did not intend on using the tape at trial, it only had a duty to disclose the tape if it contained material information which was exculpatory in nature and would have altered the outcome of the trial. Based upon the fact that there is no record as to the contents of the tape, coupled with the overwhelming eyewitness and inculpatory evidence against the defendant, this Court cannot find that but for the 9-1-1 tape being disclosed, the outcome of the trial would have been different. Thus, the defendant's second assignment of error is overruled.
 Third Assignment of Error THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OFAPPELLANT, WHERE IT DENIED APPELLANT'S CRIMINAL RULE 33 MOTIONFOR A NEW TRIAL.
 {¶ 32} The defendant alleges that pursuant to Criminal Rule 33, he is entitled to a new trial because (1) he was subject to prosecutorial misconduct and (2) there were irregularities in the proceedings.
 {¶ 33} Criminal Rule 33 declares the grounds for which a trial court may grant a new trial. A decision to grant or deny a new trial is within the sound discretion of the trial court and may not be disturbed absent an abuse of discretion. State v.Shiebel (1990), 55 Ohio St.3d 71, 78, 564 N.E.2d 54 cert. deniedWarner v. Ohio (1991), 499 U.S. 961, 111 S.Ct. 1584,113 L.Ed.2d 649. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 Prosecutorial Misconduct {¶ 34} The defendant essentially makes two arguments as to prosecutorial misconduct. The first argument suggests that there was prosecutorial misconduct within the record, such as comments during trial. The defendant's second argument involves unspecified conduct from outside the record, such as alleged "collusion" with the standby counsels. Accordingly, the defendant specifically contends that he was selectively targeted to be prosecuted for these crimes, the prosecution intentionally withheld exculpatory evidence from him, his appointed attorneys were improperly colluding with the State, the Prosecutor improperly used the term "robber" when referring to the events that occurred, and the Prosecutor expressed his personal opinion of the defendant's guilt at trial.
 {¶ 35} There are limited instances for granting a new trial based on prosecutorial misconduct. See State v. Lott (1990),51 Ohio St.3d 160, 166, 555 N.E.2d 293, cert. denied (1990),498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. When analyzing a case based on prosecutorial misconduct, the focus is on the fairness of the trial and not the culpability of the prosecutor. Id. Furthermore, regarding in particular, allegations of misconduct outside the trial record, Criminal Rule 33(C) requires affidavits to be filed because, otherwise, the defendant's contentions would simply be mere unsupported allegations. Moreover, characterizing a defendant in the context of the crime he committed is "fair comment" if the evidence supports such a characterization. SeeState v. Smith (2002), 97 Ohio St.3d 367, 377, 780 N.E.2d 221
(holding that in the opening statement, the prosecutor's reference to the defendant as "baby murderer" and "baby molester" were "fair comment" because the evidence supported the characterization).
 {¶ 36} In the instant case, the defendant does not offer affidavits or any other evidence to support allegations that the prosecutor colluded with the defendant's standby counsels or selectively prosecuted the defendant in order to prevent the defendant from receiving a fair trial. Moreover, the trial record itself does not support these allegations. Additionally, given the context of the crime and the testimony at trial, the prosecutor's use of the word "robber" was "fair comment" given the evidentiary support. Without any evidence or specific instances from the record to support the defendant's assertions that the prosecutor acted contrary to the law, we cannot find that the trial court abused its discretion in overruling the motion for a new trial.
 Irregularities in the Proceeding {¶ 37} In this argument, the defendant alleges that the law requires a new trial because (1) the jury was presented with, and convicted the defendant on, duplicative charges (i.e. robbery and aggravated theft and the two separate counts of failure to comply), (2) the trial court denied the defendant's motion for a change of venue, (3) the judge allowed the defendant's mug shot to be used at trial, (4) the trial court allowed a police report to be admitted at trial, and (5) he was subjected to ineffective assistance of counsel.
 Duplicative Charges {¶ 38} In Blockburger v. United States, the United States Supreme Court determined a test for whether separately charged crimes arising out of the same act constitutes being charged for the same offense. Blockburger v. United States (1932), 284 U.D. 299, 304, 52 S.Ct. 180, 76 L.Ed.2d 306. The Court stated, "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Id.
 {¶ 39} Here, the defendant alleges that he was subject to two duplicative crimes, which violated his right against double jeopardy. Appellant's Brief at 22. First, the defendant alleges the robbery and aggravated theft are essentially the same crime. Second, the defendant claims that the two charges of failure to comply are also the same.
 {¶ 40} Applying the Blockburger test to aggravated theft and robbery demonstrates that these crimes are different. The crimes of aggravated theft and robbery under which the defendant was charged are as follows:
2913.02 Theft; aggravated theft
 (A) No person, with purpose to deprive the owner of propertyor service, shall knowingly obtain or exert control over eitherthe property or services in any of the following ways:
 (1) Without consent of the owner or person authorized to giveconsent;
* * *
(4) By threat
 2911.02 Robbery
 (A) No person, in attempting or committing a theft offense orin fleeing immediately after the attempt or offense, shall do anyof the following:
* * *
(2) Inflict, attempt to inflict, or threaten to inflictphysical harm on another.
Count One of the Indictment states:
[t]hat on or about June 12, 2003, at Defiance County, Ohio,Daniel P. McKinney did, in attempting or committing a theftoffense as defined in Section 2913.01 of the Ohio Revised Code orin fleeing immediately after such attempt or offense, inflict,attempt to inflict, or threaten to inflict physical harm onanother, in violation of Ohio Revised Code Section2911.02(A)(2). . . .
Similarly, Count Two states:
[that] Daniel P. McKinney did, with purpose to deprive theowner of property, knowingly obtain or exert control over saidproperty without the consent of the owner or a person authorizedto give consent, and/or by threat, the value of said propertybeing more than One Hundred Thousand Dollars . . . (emphasisadded).
 {¶ 41} The jury found the defendant guilty of the charges stated in the indictment. Therefore, the jury found that, under the theft charge, the defendant deprived the owner of property without consent and/or by threat. Because the theft charged here is simply theft by threat, the "and/or" jury finding in the theft charge satisfies the Blockburger test. In other words, the two separate crimes are theft without consent and theft by threat.
 {¶ 42} Assuming, arguendo, that the jury found the defendant guilty solely of theft by threat, R.C. 2913.02(A)(4), the fact that robbery, R.C. 2911.02(A)(2) requires more than a mere threat is also sufficient to distinguish the two crimes. As charged in the indictment, the robbery threat requires the threat "to inflict physical harm on another," whereas the theft threat requires just a mere threat (i.e. a threat not necessarily coupled with a threat to inflict physical harm). Thus, the defendant was not charged with duplicative crimes.
 {¶ 43} Both counts of failure to comply are met with an easier disposition. Count Four of the Indictment states:
[that] Daniel P. McKinney did operate a motor vehicle so as towillfully elude or flee a police officer after receiving avisible or audible signal from a police officer to bring hismotor vehicle to a stop, and the operation of the motor vehicleby the offender caused a substantial risk of serious physicalharm to persons or property, in violation of Section2921.331(B). . . .
Similarly, Count Five states:
[that] Daniel P. McKinney did operate a motor vehicle so as towillfully elude or flee a police officer after receiving avisible or audible signal from a police officer to bring hismotor vehicle to a stop, and in committing the offense, saidDaniel P. McKinney was fleeing immediately after the commissionof a felony, in violation of Ohio Revised Code, Title 29, Section2921.331(B). . . .
 {¶ 44} The Blockburger test is satisfied here because Count Four requires a finding that the "operation of the motor vehicle caused a substantial risk of serious physical harm . . ." Contrarily, Count Five requires that the State prove the defendant was eluding police "immediately after the commission of a felony." Thus, these charges are not duplicative.
 Change of Venue {¶ 45} Here, the defendant alleges that his motion for a change of venue should have been granted because he did not receive a fair trial due to the pre-trial publicity.
 {¶ 46} Again, the trial court has discretion to grant or deny a motion for change of venue, and its ruling will not be disturbed on appeal unless that court abused its discretion.State v. Lundgren (1995), 73 Ohio St.3d 474, 479,653 N.E.2d 304. The Supreme Court of Ohio has long held that the voir dire process provides the best evaluation as to whether prejudice exists amongst community members precluding the defendant from receiving a fair trial. State v. Swiger (1966),5 Ohio St.2d 151, 214 N.E.2d 417, paragraph one of the syllabus. A defendant claiming that "pretrial publicity has denied him a fair trial must show that one or more of the jurors were actually biased."State v. Treesh (2001), 90 Ohio St.3d 460, 464, 739 N.E.2d 749.
 {¶ 47} In the case sub judice, the defendant alleges that he was prejudiced by "pervasive pretrial publicity, which depicted mug shot photo[s] and set forth erroneous account[s] of prior convictions. . . ." Appellant's Brief at 24-25. This claim, however, is not supported by anything in the record. When the defendant initially filed his motion for a change of venue, the trial court denied the motion with a possibility of renewal if a biased jury was impaneled. The record reflects that the trial court took precaution when impaneling the jury by asking prospective jurors questions concerning bias and prior knowledge of the case and, consequently, dismissing them if they answered in the affirmative. Trial Tr., Vol. I, pp 28-110. This Court, therefore, finds that the court below did not abuse its discretion when it denied the defendant's motion for a change of venue.
 Mug Shot {¶ 48} Here, the defendant alleges that he was prejudiced when the State introduced the police "mug shot" from the defendant's arrest at trial. The defendant states the mug shot "provided the jury with a reasonable reference that the appellant had a prior criminal involvement." Appellant's Brief at 24. At trial, the State rebutted these allegations by stating that
[the mug shot] was offered, um, purely as evidence todemonstrate that a line of questioning that the Defendant hadengaged in throughout the course of the trial, was in fact,unwarranted and that being, that he would somehow, um, exhibitinjuries at the time of his, um, booking or arrest. And the photodemonstrates that that, in fact, was not the case. The photo alsois offered by the State and was offered by the State in responseto a question that the defendant asked a witness of the Statewhich was, were there any videos? Why weren't any videos orphotographs taken of me at the time of the arrest[?] And, um,that being in the possession of the State, we, in turn, offeredthat to show that photograph of him had, in fact, [been] taken atthe time of his arrest.
Because the defendant raised these questions to the State's witnesses, the court admitted the photo.
 {¶ 49} In State v. Lancaster, the Supreme Court of Ohio permitted the use of a mug shot taken after the defendant's arrest. State v. Lancaster (1971), 25 Ohio St.2d 83,267 N.E.2d 291. The Court rationalized that "the use of the mug shot inLancaster could not give rise to suspicion in the minds of the jurors that the accused had prior criminal involvement, since it was there specified that the photograph was taken after the arrest for the crime for which he was being tried." State v.Breedlove (1971), 26 Ohio St.2d 178, 182 271 N.E.2d 238 (citingLancaster, 25 Ohio St.2d 83).
 {¶ 50} We find the reasoning of Lancaster applicable here. The record shows that the defendant's questioning at trial opened the door to the photo being introduced in order to combat the defendant's allegations of police wrongdoing. Moreover, when arrested, the defendant identified himself as another person, and, in response, the arresting officers compared the defendant's booking sheet with a photo of the person the defendant purported to be. The booking sheet, which contained the false name and the defendant's picture, was introduced to support this testimony. Finally, the mug shot was introduced after the defendant queried about how no photo was taken of him following his booking or arrest. Since the time and place of the mug shot is not in question, there can be no bias. See Lancaster, supra. Thus, we find this argument to be without merit.
 Stolen Vehicle Police Report and Motion to Dismiss Count III {¶ 51} In this argument, the defendant alleges that the stolen vehicle police report was incorrectly allowed into evidence. Consequently, the defendant argues that even with the introduction of this police report, the State did not have any evidence to support a finding of guilt on Count Three of the Indictment (i.e. receiving stolen property). The record states:
Mr. Strausbaugh: That document is in the form of a businessrecord kept in maintained by the, um, the police officer andinvestigating this matter [sic]. He testified that he hadreceived information over the LEADS or NCIC reports that thisvehicle that was, with the VIN number and license plateidentification that was being driven by the Defendant [sic].
 The Court: His testimony was admitted without objection.
* * *
Mr. Strausbaugh: The officer testified that that was adocument that he had obtained as the investigating officer in thecase to confirm the information that he obtained over the LEADS,and the NCIC maintained that as an investigatory officer, kept itin his possession and brought it to court in the regular courseof his duties and that was the testimony.
* * *
The Defendant: Yes. I would like, um, like to make a CriminalRule 29 oral motion for directed verdict.
 The Court: Basis?
 The Defendant: Based upon, absent foundation as far as toCount III of the indictment, receiving stolen property.
 The Court: Absent for a lack of evidence to take the matterbefore jury is your contention?
 The Defendant: Yes.
 The Court: Mr. Strausbaugh, you wish —
 Mr. Strausbaugh: The evidence admitted, um, more specifically,the stolen vehicle police report on Exhibit 29, as well as theofficer's testimony regarding this matter, would substantiatethat case and allow [it] to proceed with sufficient evidence forit to jury.
 The Defendant: You Honor, I would submit that the testimony ofthe officer was based upon the representations of, um, a stolenvehicle police report. It was prepared by Officer C. Kiser, and Iguess the vehicle belonged to Sarah Ferguson, which no evidencewas brought forward to the ownership or nature of the report.And, um, I would be prejudiced by not being afforded anopportunity to cross those individuals.
 Mr. Strausbaugh: The owner of the vehicle, as is indicated onExhibit 29 as being Sarah Ferguson [sic]. That, that is, um,included in that particular exhibit. Jury could then infer fromthe evidence presented, that the Defendant had reasonable causeto believe that it had been obtained through the commission of atheft offense, and the evidence was very clear and direct thathe, um, did receive, retain, dispose of or whatever, um, thatparticular item of stolen property.
 The Court: Jury could find that the evidence, direct evidenceestablishes circumstances from which they could concludereasonable cause to believe it was stolen. Rule 29 motion will beoverruled.
Trial Tr. Vol. II, pp 400-404.
 {¶ 52} As a threshold matter, we must first determine whether the trial court erred in admitting the stolen vehicle police report. Hearsay is an out of court statement offered for the truth of the matter asserted. Evid. R. 801(C). Generally, hearsay statements are not admissible at trial unless the statement comes in under a recognized exception. Recently, the United States Supreme Court recognized that certain hearsay statements violate the Sixth Amendment Confrontation Clause even though a state may have a recognized statutory exception. Crawford v. Washington
(2004), ___ U.S. ___, 124 S.Ct. 1345. (holding that out-of-court statements that qualify as testimonial are not admissible under the Confrontation Clause unless witness is unavailable and the defendant had a prior opportunity to cross-examine). The hearsay exception at issue here is the business records exception, which does not fall within the Crawford rule. Id. at 1367 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial — for example, business records. . . ."). The business records exception states:
[r]ecords, reports, statements, or data compilations, in anyform, of public offices or agencies, setting forth (a) theactivities of the offices or agencies, or (b) matters observedpursuant to duty imposed by law as to which matters there was aduty to report, excluding, however, in criminal cases mattersobserved by police officers and other law enforcement personnel,unless offered by defendant, unless the sources of information orother circumstances indicate lack of trustworthiness.
Evid. R. 803(8).
 {¶ 53} The foundational requirement for Evid. R. 803(8) evidence is (1) a government employee or agent who is the source of the information must have personal knowledge of the event or condition described in the report; (2) the source must be under a legal duty to report the information; and (3) the official agency must be legally required to prepare and maintain the report. 1 Weissenberger's Ohio Evidence (1993), 92 Section 803.106. In interpreting the breadth of Evid. R. 803(8), the Supreme Court of Ohio stated:
[w]e interpret the exclusionary language of Evid.R. 803(8) asconsistent with the law prior to its adoption. The phrase,`excluding, however, in criminal cases matters observed by policeofficers and other law enforcement personnel . . .,' prohibitsthe introduction of reports which recite an officer'sobservations of criminal activities or observations made as partof an investigation of criminal activities. This phrase does notprohibit introduction of records of a routine, intra-police, ormachine maintenance nature, such as intoxilyzer calibrationlogs.
 State v. Ward (1984), 15 Ohio St.3d 355, 358, 474 N.E.2d 300.
 {¶ 54} Taking into consideration the Ward decision and the plain language of Evid. R. 803(8), we find that because this police report was introduced by the State in a criminal matter, it is the kind of report that is not admissible under this exception. Therefore, the court below erred in admitting it into evidence.
 {¶ 55} Next, we must consider whether this error was prejudicial. We conclude that it was. In the instant case, a police detective testified that he ran the defendant's car's VIN number and license plate, and it came back stolen. He later confirmed this with the police report. Throughout the police officer's testimony, he testified without objection from the defendant as to the car being stolen from Ft. Wayne, Indiana.
 {¶ 56} R.C. 2913.51(A) states that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through a commission of a theft offense." In order to be guilty of receiving stolen property, therefore, one must not only "receive, retain, or dispose" of the stolen property, but also know or have reason to know that the property is stolen. After reviewing the testimony in this case, we conclude that the record does not reflect that the defendant knew or had reason to know the vehicle he was driving was stolen. Assuming, arguendo, that the officer's testimony, which was based on hearsay statements and records, is admissible, nothing in the record reflects the defendant's knowledge about the vehicle being stolen. In his closing argument, the Prosecutor stated:
if you receive, retain, or dispose of property of another andyou knew or had reasonable cause to believe, that it had beenobtained through the commission of a theft offense, and it is acar, then that is receiving stolen property. And in this case,then that is receiving stolen property. And in this case,receive, retain, or dispose are the key words. Certainly, drivingsomeone's stolen vehicle is retaining it. And, certainly, youwould have reasonable cause to believe that it had been obtainedthrough the commission of a theft offense if it had been stolenin Fort Wayne, Indiana earlier that day and it is not yours andyou are driving it as a get-away car from a bank robbery.
Trial Tr., Vol. IV, p. 667.
 {¶ 57} In State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, the Ohio Supreme Court stated:
An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence admitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilty beyond a reasonable doubt. The relevantinquiry is whether, after viewing the evidence in a light mostfavorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond areasonable doubt.
 {¶ 58} When reviewing whether the verdict was against the manifest weight of the evidence, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541.
 {¶ 59} In this case, the only evidence in the record was that the defendant was in possession of a car, which via hearsay testimony, was allegedly stolen. From this evidence alone, the State sought to infer all the elements of the offense as to the theft and the requisite knowledge thereof by the defendant. In sum, there was virtually no admissible evidence as to the elements of R.C. 2913.51(A), and the conviction, therefore, was against the weight and the sufficiency of the evidence. SeeState v. Spurlock (2003), 3rd Dist. No. 05-03-11,2003-Ohio-6006 at ¶ 10. Thus, as to this issue only, the assignment of error is sustained.
 Ineffective Assistance of Counsel {¶ 60} At the outset, the pro se defendant alleges he is entitled to a new trial because his representative counsel was ineffective. As this Court has previously stated, the State of Ohio has adopted the two-part test outlined by the United State's Supreme Court in Strickland v. Washington for determining whether a criminal defendant has been denied ineffective assistance of counsel. See, e.g. State v. Brown, 3d Dist. No. 8-02-09, 2002-Ohio-4755, at ¶ 50. In order to claim ineffectiveness, the defendant must first show "that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington (1984), 466 U.S. 668,687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674. Second, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 {¶ 61} The Sixth Amendment guarantees a defendant the right to represent himself in court. Faretta v. California (1975),422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. When a defendant chooses to proceed pro se with the "assistance" of counsel, the stand-by counsel must still be effective. Id. at 835. However, a defendant must be wary when attempting to exercise his constitutional right to represent himself because "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of `effective assistance of counsel.'" Id. at 835, n. 46. In particular, it must be noted that both standby counsels in this case were discharged prior to trial.
 {¶ 62} In the instant case, there is nothing in the record that indicates (1) that the stand-by counsels were deficient and (2) that, if they were deficient, but for their deficiencies, the result of the trial would have been different. Here, the defendant alleges that the trial court's errors, which denied him access to some evidence at trial, amounted to ineffective assistance of counsel because he was ineffective in representing himself. Appellant Brief at 23. Moreover, the defendant alleges that he was not granted access to legal research materials when attempting to prepare his defense.
 {¶ 63} As stated in Farretta, a defendant must be hesitant when attempting to represent himself. Unless the defendant is versed in the art of legal representation, he is likely placing himself at a disadvantage in the courtroom. We cannot find that the defendant was subject to ineffective assistance of counsel simply because the trial court ruled against him in court on certain motions and procedures. Moreover, we cannot find there was ineffective assistance of counsel when the defendant's own actions caused him to lose the legal research materials presented to him.[2] Finally, given the overwhelming evidentiary support that the defendant was in fact the individual who eluded police after robbing a bank, we cannot find that, even if there was a deficiency, the result of the trial would have been different. Thus, we find this final argument without merit. The defendant's third assignment of error is overruled except for the hearsay argument and the sufficiency of the evidence as it relates to the charge of receiving stolen property.
 Conclusion {¶ 64} All three assignments of error are overruled except as to the Receiving Stolen Property charge noted above. Accordingly, the judgment and sentence of the trial court is reversed as to the charge of Receiving Stolen Property. The judgment of the trial court is affirmed in all other respects. The matter, however, must be remanded for re-sentencing as to the remaining charges without the charge of Receiving Stolen Property.
Reversed in part, Affirmed in part and Cause Remanded.
 Cupp and Bryant, J.J., concur.
[1] The defendant verbally acknowledged this waiver several times during that proceeding. See Trial Hearing Tr. (Sept. 15, 2003) at 21-28.
[2] The record reflects that the defendant lost the right to use the correctional facility's research library because he was giving legal advice to others. There is no indication in the record that the defendant is licensed to practice law in order to provide legal assistance.