OPINION
{¶ 1} The defendant-appellant, Charles M. Clifford, appeals the judgment and sentence of the Paulding County Court of Common Pleas finding him guilty of one count of rape, in violation of R.C.2907.02(A)(1)(b), and one count of sexual battery, in violation of R.C.2907.03(A)(5).
 {¶ 2} A Paulding County Grand Jury indicted Clifford on one count of felonious assault, in violation of R.C. 2903.11(A)(1); one count of sexual battery, in violation of R.C. 2907.03(A)(5); and two counts of rape, in violation of R.C. 2907.02(A)(1)(b). The felonious assault charge was tried separately from the rape and sexual battery charges.[1] As to the rape and sexual battery charges, the bill of particulars stated:
COUNT I: on or about June 6th, 1999 through June 5th, 2000, PauldingCounty, Ohio, Charles M. Clifford did engage in sexual conduct with [thevictim], not the spouse of the said Charles M. Clifford, and the said[victim] being less than thirteen (13) years of age, in violation ofSection 2907.02(A)(1)(b). . . .
 More specifically, on said date, Charles M. Clifford did have sexualintercourse with [victim in] . . . Antwerp, Ohio.
 COUNT II: on or about the 20th day of June, 2001, in Paulding County,Ohio, Charles M. Clifford did engage in sexual conduct with [thevictim], not the spouse of the said Charles M. Clifford, and the said[victim] being less than thirteen (13) years of age, in violation ofSection 2907.02(A)(1)(b). . . .
 More specifically, on said date, Charles M. Clifford did have sexualintercourse with [victim in . . . Antwerp, Ohio.
* * *
COUNT IV: on or about the 4th day of October 2003, in Paulding County,Ohio, Charles M. Clifford, did engage in sexual conduct with [thevictim], not the spouse of the said Charles M. Clifford, the said CharlesM. Clifford being the natural parent of [the victim], in violation ofSection 2907.03(A)(5). . . .
 More specifically, on said date, Charles M. Clifford did have sexualintercourse with [victim in . . . Antwerp, Ohio.
Bill of Particulars (capital letters in original and emphasis not included).
 {¶ 3} A jury was impaneled on October 19, 2004. At trial, Clifford's daughter testified that her father started "touching" her when she was approximately nine years old. Furthermore, the daughter testified that in 1999, Clifford started "giv[ing] me hugs and kisses, and he'd play with my breast." Trial Tr. at 236. According to the daughter, this conduct continued, two or three times a week, until she was eleven years old. After her eleventh birthday in June 2001, the daughter testified that Clifford began "inserting his finger in [her] vagina." Id. at 238-39. Eventually, during that same timeframe, and until the daughter turned thirteen years old, the daughter stated that Clifford would have sexual intercourse with her. Specifically, the daughter testified that "[h]e would insert his penis in my vagina" every other day. Id. at 240. Moreover, the daughter testified that Clifford would ejaculate on her and on the bed, which he cleaned up with at towel. She also stated that Clifford would instruct her to "wash up" afterwards. Finally, the daughter testified that Clifford occasionally administered EPT pregnancy tests to her.
 {¶ 4} The daughter confided with her friend at school that she was being molested. The friend advised the daughter to inform a "grown up" about her fathers conduct. Subsequently, the daughter informed her school counselor about Clifford's sexual conduct.
 {¶ 5} On cross-examination, Clifford attempted to impeach the daughter's credibility claiming that her story changed. For example, the trial transcript states:
Q. Then she asked you, "And he put his fingers in there or did he justtouch them?" Do you recall that you said, "He put them in"? [sic].
 A. Yeah.
 Q. So that's true?
 A. Uh-hum.
 Q. That he inserted his fingers into your vagina. And then you saidthat, "Did it stop when you were nine years old or has it kept going? Yousaid, "It kept going." And she said, "What?" And then you said that hehad sex. And then she asked you, "What do you mean by having sex? Do youmean like intercourse?" Do you remember her asking you that?
 A. Yeah.
 Q. Do you remember what you said?
 A. Yeah.
 Q. What did you say?
 A. I didn't kind of know what intercourse was, I don't think.
 Q. What it says here is that you said, "Yeah."
 A. Okay
 Q. And then it says, "How long have you been having, has he been havingintercourse with you? Do you know like has it been since you were nine?"And you said, "Yes." Do you remember that?
 A. Yeah.
 Q. So she asked you if you had been having intercourse since you werenine, and you said that you had. Is that true? A. It's true what I said,yeah.
 * * *
 Q. Is that really what happened?
 A. No, it didn't start, intercourse didn't start at nine.
 Q. * * * And then it says, "About how often did this used to happen?And you said, "Daily."
 * * *
 Q. Okay. So when you, when you told her that you had been havingintercourse with your dad every day, I mean daily, that meant you hadbeen having intercourse with him every day? A. I meant every other day,but I said daily because I normally use it for every other day.
Trial Tr. pp. 257-60. Moreover, Clifford then attempted to contradict the daughter's story with her statements she made to the police detective investigating the allegations. The record states:
Q. Okay. Do you remember that later on in that month a couple of, a fewdays later in October of 2003 you had another interview, anothertape-recorded interview with Deputy Garcia?
 A. Yeah. * * *
 Q. * * * And Detective Garcia or, I mean, excuse me, Deputy Garciaasked you, when do you think the last time you had sexual intercoursewith you, the last time he had sexual intercourse with you? You said — doyou remember what you told him?
 A. No.
 Q. It says here that you said, "A day or two, two days before Itold the counselor." Is that right?
 A. Yeah.
 Q. Would that be? But then you guys say, so, Deputy Garcia says, "So itwould have been like October, October 4th. No, it couldn't have beenOctober 4th. You told the counselor at school, right?" Do you rememberhim asking you about that?
 A. Yeah.
 Q. You were trying to figure you what day it was? And you said, "Yeah."And then he said, "Well, looking at the calendar on the wall, what datedo you think it was?" And then you said, "Before October." * * * Did youever figure out when the last time was that you and your dad hadintercourse?
 A. No.
 Q. You don't really know, do you? Do you know?
 A. Not really.
 Q. Okay. Then he also asked you, "After any of these sexualintercourses that you've had with you father, do you remember any kind ofdischarge from your vagina area, anything come out?" Do you remember whatyou said?
 A. No.
 Q. What you said was, "I usually pee afterwards." And then he asked,"Any kind of blood?" Do you remember what you said then?
 A. No.
 Q. No, you don't remember?
 A. I said, "No."
 Q. Yes, that's exactly right, you said, "No." So then after you andyour dad or after you and your dad had intercourse, there wouldn't be anykind of blood or anything.
Id. at pp. 263-65.
 {¶ 6} Both the State and Clifford called doctors that examined the daughter to testify. The State's witness, Dr. Randall Schlievert, concluded that the daughter's physical examination was "normal." Dr. Schlievert testified that because every female body is different, a "[a] normal exam is in no way contradictory to prior sexual abuse or contact." Id. at p. 159. For the defense, Clifford called the daughter's emergency room physician, Dr. James Cleary, to the stand. Dr. Cleary testified that the daughter had a virginal introitus, which meant that the daughter's vagina "had not been stretched and the hymenal ring was in there, indicating that there had been, as best we could tell, no sexual activity." Id. at 289-90. Furthermore, Dr. Cleary testified that, in his opinion, this was not consistent with sexual intercourse, every other day, for two years.
 {¶ 7} Finally, Clifford took the stand in his own defense. Preliminarily, he denied having any sexual relationship with his daughter. Clifford testified that he never touched his daughter's breasts or vagina. He also denied ever having sexual intercourse with her. Finally, Clifford testified that his daughter was being coached into accusing him of the sexual relationship in order for his wife, the daughter's mother, to get even with him.
 {¶ 8} The jury convicted Clifford of rape as alleged in Count One of the Indictment and one count of sexual battery as alleged in Count Four. At sentencing, Clifford, against the advice of his attorney, admitted that he stabbed his wife because he wanted to leave the court with a "clear conscience." As to the issues of rape and sexual battery, Clifford adamantly denied having any sexual relations with his daughter. The trial court, taking Clifford's statements under advisement, sentenced Clifford to nine years for the rape conviction and four years for the sexual battery conviction. Furthermore, the court ordered Clifford to serve all of his sentences, including his conviction for felonious assault that was tried separately from the same indictment consecutively. It is from this judgment and sentence that Clifford appeals alleging four assignments of error. The second and third assignments of error will be discussed first.
 Second and Third Assignments of Error The verdict was against the manifest weight of the evidence.
 The verdict was not supported by sufficient evidence.
 {¶ 9} Clifford was charged with rape in violation of R.C.2907.02(A)(1)(b) and sexual battery in violation of R.C. 2907.03(A)(5). Rape, as defined in R.C. 2907.02(A)(1)(b), states:
No person shall engage in sexual conduct with another who is not thespouse of the offender or who is the spouse of the offender but is livingseparate and apart from the offender, when . . . [t]he other person isless than thirteen years of age, whether or not the offender knows theage of the other person.
Furthermore, sexual battery, as defined in R.C. 2907.03(A)(5), states that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when . . . [t]he offender is the other person's natural or adoptive parent." "Sexual conduct" is defined as
vaginal intercourse between a male or a female . . . and, withoutprivilege to do so, the insertion, however slight, of any part of the body. . . or other object into the vaginal or anal cavity of another.Penetration, however slight, is sufficient to complete vaginal or analintercourse. R.C. 2907.01(A).
 {¶ 10} In State v. Jenks, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiency of theevidence to support a criminal conviction is to examine the evidenceadmitted at trial and determine whether such evidence, if believed, wouldconvince the average mind of the defendant's guilt beyond a reasonabledoubt. The relevant inquiry is whether, after viewing the evidence in alight most favorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond a reasonabledoubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. In contrast, when reviewing whether a verdict is against the manifest weight of the evidence, this Court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.
 {¶ 11} We reject the arguments that Clifford outlines in his appellate brief that the verdict was against the manifest weight of the evidence and insufficient to support a conviction. Clifford argues that his medical expert testified that his daughter's vaginal examination was not consistent with sexual intercourse or digital penetration, every other day over the course of two years. Furthermore, Clifford highlights the lack of physical evidence presented in the State's case. Accordingly, Clifford argues that a rationale trier of fact could not have found all the evidence necessary to sustain a rape and sexual battery conviction. Furthermore, Clifford contends that the jury clearly lost its way in convicting him.
 {¶ 12} The record indicates that Clifford began touching his daughter in a sexual manner beginning at the age of nine. The daughter testified that as she got older, Clifford began to engage in sexual conduct with her until she notified a school counselor of his actions. Specifically, the daughter testified that sometime after her eleventh birthday, her father began to digitally penetrate her vagina. Furthermore, the daughter stated that eventually, her father would have sexual intercourse with her. To rebut this testimony, Clifford testified on his own behalf and denied all these allegations. Finally, the State's medical expert testified that the daughter's exam was not inconsistent with a history of sexual abuse.
 {¶ 13} In sum, therefore, viewing this evidence most favorable to the State, we are not willing to say that a rationale trier of fact could not believe the daughter's testimony and reject Clifford's in determining whether the State proved beyond a reasonable doubt all the elements of rape and sexual battery. Nor can we say in view of the State's medical testimony that a rationale trier of fact could not have chosen that testimony over the testimony of Clifford's expert witness in reaching the same conclusion. Furthermore, in reviewing the totality of the evidence, we cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice. Accordingly, the second and third assignments of error are overruled.
 First Assignment of Error Mr. Clifford was denied the effective assistance of counsel.
 {¶ 14} In this assignment of error, Clifford argues that his trial counsel made two "major and incredible" mistakes that amounted to ineffective assistance of counsel. First, Clifford contends that he was prejudiced because his trial counsel did not object or redact a portion of Dr. Schlievert's medical examination report that stated: "The referral also indicates that Mr. Clifford refused to speak to law enforcement." As a result, Clifford argues that this gave the jury an "improper inference of knowledge of guilt." Second, Clifford suggests that his trial counsel failed to "limit the prosecution to the facts of the case." In this argument, Clifford contends that he was not afforded a "reasonable defense" because a general timeframe was alleged, as opposed to specific days, where he was unable to present an alibi for his defense. Specifically, Clifford argues that because the indictment alleges that Clifford had sexual intercourse with his daughter "on or about June 6th, 1999 through June 5th, 2000" he could not present an adequate defense unless he questioned the witnesses about every single day of that year.
 {¶ 15} As we have previously noted, Ohio has adopted the two-prong test outlined by the United States Supreme Court in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, when determining whether a criminal defendant has been denied effective assistance of counsel. See, e.g., State v. McKinney, 3rd Dist. No. 4-04-12, 2004-Ohio-5518. In order to claim ineffectiveness, the defendant must first show "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. Second, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 {¶ 16} In State v. Leach, 102 Ohio St.3d 135, 807 N.E.2d 335,2004-Ohio-2147, at ¶ 30 (emphasis in original), the Ohio Supreme Court held that using a defendant's "pre-arrest silence in the state's case-in-chief as substantive evidence of guilt subverts the policies behind the Fifth Amendment." The Court stated, "[u]se of pre-arrest silence in the state's case-in-chief would force defendants either to permit the jury to infer guilt from their silence or surrender their right not to testify and take the stand to explain their prior silence." Id. at ¶ 31. Nevertheless, the "Fifth Amendment is not violated when a defendant who testifies in his own defense is impeached with his prior silence."Jenkins v. Anderson (1980), 447 U.S. 231, 235, 100 S.Ct. 2124.
 {¶ 17} The record reflects that Dr. Schlievert's statement that Clifford refused to speak to law enforcement appeared in a single sentence in a two page medical report. The report was admitted into evidence to prove Dr. Schlievert's medical examination results, not to prove that Clifford refused to speak to the police. Moreover, the record reflects that the State did not comment or exploit this statement to the jury during the course of the trial. Accordingly, the evidence of Clifford's pre-arrest silence was not introduced as substantive evidence of guilt, which is what is required to violate the Fifth Amendment pursuant to Leach. Furthermore, Clifford testified on his own behalf in this case, which, under Jenkins, permits the State to introduce evidence of pre-arrest silence to impeach his testimony. However, this was never done by the State as noted above.
 {¶ 18} Turning to Clifford's second argument — i.e. he was not afforded a reasonable defense because his attorney did not object to a specific timeframe for which he engaged in sexual conduct with his daughter — we conclude that not objecting to the one year timeframe in the indictment did not fall below an objective standard of reasonableness. It is permissible for the prosecutor to use a timeframe in which the alleged events described in the Indictment took place. SeeState v. Tesca (1923), 108 Ohio St. 287, 140 N.E.2d 629, at paragraph one of the syllabus ("In a criminal charge the exact date and time are immaterial unless in the nature of the offense exactness of the time is essential.") Accordingly, this argument is without merit.
 {¶ 19} Thus, Clifford's first assignment of error is overruled.
 Fourth Assignment of Error The trial court erred by sentencing Mr. Clifford based on facts notfound by the jury or admitted by Mr. Clifford, in violation of Mr.Clifford's right to due process of law, his right to trial by jury, andhis right to presentment to the grand jury.
 {¶ 20} In this assignment of error, Clifford argues, relying on the United States Supreme Court decision Blakely v. Washington (2004), 542 U.S. —, 124 S.Ct. 2531, that the trial court lacked authority to sentence Clifford to non-minimum, consecutive terms. As in his first appeal, we reject this argument and overrule this assignment of error. See State v.Clifford, 3rd Dist. No. 11-04-06, 2005-Ohio-958 citing State v. Trubee,
3rd Dist. No. 9-03-65, 2005-Ohio-522, at ¶ 23.
 {¶ 21} In conclusion, all four of Clifford's assignments of error are overruled, and the judgment and sentence of the trial court is affirmed.
Judgment affirmed.
 Bryant, J., concurs.
 Rogers, J., concurs in judgment only.
[1] See State v. Clifford, 3rd Dist. No. 11-04-06, 2005-Ohio-958.